# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DAVID ABRAHAMS,

        Plaintiff,

v.

STATE OF CONNECTICUT
DEPARTMENT OF SOCIAL SERVICES
and STATE OF CONNECTICUT SUPPORT
ENFORCEMENT SERVICES,

        Defendants.

3:16-CV-00552 (CSH)

**February 21, 2018**

## OMNIBUS RULING

**HAIGHT,** Senior District Judge:

Plaintiff David Abrahams ("Plaintiff" or "Abrahams"),[1] proceeding *pro se*, *in forma pauperis*, and currently incarcerated in a Connecticut correctional institution, brought this suit for money damages under 28 U.S.C. § 1983 against Defendants Department of Social Services and Support Enforcement Services (collectively, "Defendants" or "the State Agencies"). Defendants are agencies of, respectively, the executive and judicial branches of the government of the State of Connecticut. Defendants have filed a Motion to Dismiss [Doc 24], putting forth a variety of grounds on which they propose the Court should dismiss Plaintiff's Amended Complaint [Doc. 15]. This Ruling

---

[1] Plaintiff is also known as David Abrams. Plaintiff currently maintains two parallel and unrelated actions before this Court under that name. *See* Case Nos. 3:17-cv-01570-CSH; 3:17-cv-01659. Abrahams and Abrams share a common prisoner identification number, and the Court believes them to be aliases of a single individual. Because all filings in this matter refer to Plaintiff as "Abrahams," this Ruling will do the same.

1

resolves that Motion, as well as Plaintiff's pending Motions for Leave to File a Second Amended Complaint [Docs. 32, 34, 35] and Motion for Injunction [Doc. 38].

# I. BACKGROUND

The facts herein are taken from Plaintiff's Amended Complaint [Doc. 15], and accepted as true only for the purposes of this Ruling. Paragraph references are to the Amended Complaint.

On July 9, 1993, Plaintiff's late son, David Anderson, was born to Cheryl Anderson ("Anderson"). ¶ 2. Plaintiff and Anderson cohabited at the time of their son's birth, and continued to do so until April 1995. *Id.*

In July, 1995, Plaintiff was notified by mail that he owed the Department of Social Services $6,800.00, as a result of Anderson's receipt of state assistance for their child's support. *Id.* Plaintiff learned, from subsequent communications with Investigation Supervisor Colleen Michelson ("Michelson"), that Anderson had been claiming state support for their child, while failing to identify her son's paternity. *Id.* At some point Anderson called Michelson, "out of the blue," and identified Plaintiff as the father. *Id.* Consequently, the state agency was endeavoring to recover from Plaintiff the state funds paid to Anderson prior to her identification of Plaintiff as the father. Plaintiff protested to Michelson that he had been living with the child and contributing to the child's support. *Id.* Michelson instructed him to collect evidence of those facts. ¶ 3. Plaintiff provided such evidence to Michelson in August, 1995. *Id.* At that time Michelson informed Plaintiff that an investigation would be conducted to determine whether Anderson defrauded the state, and that Plaintiff would remain liable for the balance of the support fees, pending resolution of that investigation. *Id.*

In 1997, Plaintiff made approximately twelve temporary payments, of $30.00 each, towards

the child support debt. ¶ 4. At a court date in February, 1998, Plaintiff was ordered to pay $550.00 towards the child support debt or face incarceration. *Id.* Plaintiff paid this lump sum. *Id.* Subsequently, $10.00 per week was garnished from Plaintiff's paychecks. *Id.* Additionally, his federal and state income returns were attached. *Id.* Money was taken from Plaintiff towards this debt up until his November, 2000 incarceration, which incarceration continues throughout this date. ¶ 5.

On or about April 1998, Anderson was arrested for welfare fraud. ¶ 5. Plaintiff called the Department of Support Services and inquired about his debt. *Id.* He was told by a female employee (possibly Michelson) that he would not be reimbursed until Anderson herself reimbursed "almost all of the balance" to the state. *Id.*

Anderson was convicted of welfare fraud in or about the summer of 1998 and ordered to repay a $7,781.00 balance. ¶ 6. Anderson repaid the entire balance on or about January 2003. ¶ 8.

In April, 2006, Plaintiff began receiving billing notices of $10.00 per week from the Support Enforcement Department. ¶ 10. Plaintiff corresponded with Supervisor Paula Piccirillo ("Piccirillo"), who provided him with a payment history showing $3,662.80 in payment towards the child support debt. *Id.* This figure omits the $550.00 lump sum payment Plaintiff made in February, 1998. Piccirillo informed Plaintiff that he still owed $3,481.00 on the child support debt, and referred him to Sardis Khazarian ("Khazarian") of the Social Services Department. *Id.* When contacted, Khazarian did not provide any assistance. ¶ 11.

Plaintiff filed a civil suit in state court to recoup the $4,212.80 collected from him towards payment of a debt Anderson had satisfied in full. ¶¶ 12-13. This suit was dismissed in June 2009, without prejudice, and with instructions to file a claim with the Claims Commissioner. ¶ 14.

Plaintiff filed a notice of claim with the Claims Commissioner on November 12, 2009. ¶ 15. That claim was dismissed on April 21, 2010, for lack of subject matter jurisdiction. ¶ 17.

On May 4, 2010, Plaintiff requested in writing that the Connecticut General Assembly review the Claims Commissioner's decision. ¶ 18. This request for review was submitted to the next regular Assembly session in January, 2011, and the Claims Commissioner's decision was upheld. ¶ 19.

In December, 2012, Plaintiff filed a second civil lawsuit in state court, this time against Michelson, Piccirillo, and Khazarian, in their official capacities. ¶ 20. This complaint was dismissed on the grounds of sovereign immunity in October, 2013. *Id.* An appeal of this decision was dismissed by the state appellate court in April, 2014. *Id.*

The Plaintiff received, as recently as November, 2015, a billing statement indicating that Plaintiff still owed $3,481.49 on the child support debt. ¶ 28.

Plaintiff initiated this action by the Complaint [Doc. 1] filed on April 7, 2016. That initial Complaint named as Defendants Michelson, Khazarian, and Piccirillo, all of whom have since been terminated and are no longer parties to this action. On December 9, 2016, the Court granted Plaintiff leave to amend his Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(1), which allows for a single amendment, as of right, within 21 days of service or responsive pleading.[2] *See* Doc. 14.

Plaintiff's Amended Complaint [Doc. 15] was filed with this Court on December 22, 2016, naming the two State Agencies as Defendants, and terminating the three individual Defendants. Receipts for service of process, including Certified Mail receipts dated January 3, 2017, were filed by Plaintiff on February 17, 2017 [Doc. 16]. Those receipts indicate that Defendants did not waive

---

[2] At the time of his First Motion to Amend [Doc. 13], no service had been made.

service of process.  Doc. 16 at 1, 3.  Defendants' default was entered on May 1, 2017 [Doc. 18],

pursuant to Plaintiff's Motion for Default Entry [Doc. 17] and Fed. R. Civ. P. 55(a).  On May 24,

2017, Defendants filed a Motion to Vacate [Doc. 21] the entry of their default.  Familiarity with the

Court's Ruling [Doc. 27] granting Defendants' Motion and vacating the entry of default is assumed.

Since the filing of the instant Motion to Dismiss [Doc. 24], Plaintiff has filed a number of

additional motions, namely, three Motions for Leave to Amend the Amended Complaint [Docs. 32,

34, 35] and a Motion for Injunction [Doc. 38].  In the interest of judicial economy, the Court stayed

consideration of the Motions for Leave to Amend, pending resolution of the instant Motion to

Dismiss.  *See* Doc. 36.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)), lack

of personal jurisdiction under Rule 12(b)(2), insufficient service of process under Rule 12(b)(5), and

failure to state a claim upon which relief can be granted under Rule 12(b)(6).[3]  *See* Fed. R. Civ. P.

12(b).

> Where, as here, the defendant moves for dismissal under Rule
> 12(b)(1), as well as on other grounds, the court should consider the
> Rule 12(b)(1) challenge first since if it must dismiss the complaint for
> lack of subject matter jurisdiction, the accompanying defenses and
> objections become moot and do not need to be determined.

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)

(citation and internal quotation marks omitted) (quoting *Rhulen v. Alabama Ins. Guar. Ass'n*, 896

F.2d 674, 678 (2d Cir. 1990)).

---

[3] Defendants have, by their Reply Brief [Doc. 41], withdrawn their contentions as to
"the issue of service," acknowledging the receipt of proper service on the Connecticut Attorney
General, as provided for by this Court's prior Ruling [Doc. 27].  Def. Reply Br. ¶ 1.

Defendants contend that both the Eleventh Amendment and the *Rooker-Feldman* doctrine deprive the Court of subject matter jurisdiction. Def. Br. 12. The Court will now consider those two theories.

## A. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine divests federal courts of jurisdiction "over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam). "The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)). To apply the doctrine, four circumstances must exist: (1) the federal-court plaintiff must have lost litigation before a state court, (2) the federal-court plaintiff must now complain of an injury from the adverse state court judgment, (3) the federal-court plaintiff invites the federal court to review and reject that adverse judgment of the state court, and (4) the state court judgment was rendered before the federal court action. *Id.*

Plaintiff prosecuted two separate state court actions in relation to this matter. Defendants, citing to the Complaint, summarize the state court actions thus:

> [Plaintiff] lost in state court when he filed a civil suit in the Connecticut superior court for reimbursement in November 2007. That suit was dismissed without prejudice in June 2009.[4] . . . He then

---

[4] Defendants amend this characterization in their Reply, which notes "the [Superior] Court's ruling in June, 2009, does not state his suit was dismissed without prejudice. Instead, it states that his suit was dismissed based on sovereign immunity." Def. Reply Br. 8. This contention is supported by Judge Marano's Memorandum of Decision, dated June 11, 2009, and attached to Defendants' Reply as Exhibit A. *See* Case No. FA 08-4023466S, Conn. Super. Ct., D. of Fairfield, at Bridgeport. This additional detail does not affect my analysis of the *Rooker-Feldman* implications of Plaintiff's state court actions.

> filed a notice of claim with the Claims Commissioner on November 12, 2009 . . . . The Claims Commissioner dismissed plaintiff's claim citing lack of subject matter jurisdiction. . . . His request for review of the decision of the Claims Commissioner was submitted to the next regular session of the General Assembly in January 2011 and the Claims Commissioner's decision was upheld. In December 2012, plaintiff then filed suit against the three state investigators and supervisors in their official capacity in Connecticut [superior court]. The State filed a Motion to Dismiss citing "sovereign immunity" as a defense in February 2013 and it was granted in October 2013. Plaintiff subsequent appeal to the Connecticut Appellate Court was dismissed in April 2014.

Def. Br. 19-20 (citations and internal quotation marks omitted).

Guidance in the application of the *Rooker-Feldman* doctrine is furnished by *Hoblock v. Albany County Board of Elections,* 422 F.3d 77, 87 (2d Cir. 2005), where Chief Judge Walker noted that the second element of *Rooker-Feldman* – that federal plaintiffs must complain of an injury caused by a state judgment – "is the core requirement from which the others derive; focusing on it helps clarify when the doctrine applies." To illustrate this principle, Judge Walker hypothesized:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 87-88. Judge Walker then provides the following formula for distinguishing the origin of injury: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88.

Judge Walker's hypothetical describes Plaintiff's present suit. Plaintiff brought two actions in state courts, seeking various relief from the state's child-support claim against him. That relief was denied, apparently on jurisdictional grounds, by, in sequence, the Claims Commissioner, the General Assembly, the Superior Court, and the Appellate Court. Now he states his claim in federal court, not for any injury done to him by the state courts, but for the injury he alleges was done to him, under color of state law, by the defendant state agencies and employees in collecting on and refusing to reimburse the disputed debt. Defendants have cited no facts indicating that the state court decisions in this matter did any more than "ratif[y], acquiesce[] in, or le[ave] unpunished" the third party action of which Plaintiff complains. *See Hoblock*, 422 F.3d at 88. Thus, based on the pleadings before me, I hold that *Rooker-Feldman* does not divest this Court of jurisdiction.

As Judge Walker noted in a footnote to his quoted *Hoblock* hypothetical, even if *Rooker-Feldman* does not bar this action, Plaintiff's "subsequent federal suit could, of course, be barred by ordinary preclusion principles." 422 F.3d at 88 n. 6 (citing *Exxon Mobil*, 544 U.S. at 293). Judge Walker expanded on that footnote in the text of his opinion, 422 F.3d at 92: "*Exxon Mobil* teaches that the narrow *Rooker–Feldman* inquiry is distinct from the question whether claim preclusion *(res judicata)* or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit." 422 F.3d at 92. While Defendants explicitly preserve the defenses of *res judicata* and collateral estoppel, they have not argued either traditional preclusion principle in the instant Motion, and I will not, at this time, offer any opinion on the merits of those possible defenses. *See* Def. Br. 26.

**B. Eleventh Amendment Immunity**

Under the Eleventh Amendment, states are immune from suit in the federal courts, absent a state's consent to waive that immunity. U.S. Const. Amend. XI. *See also Emps. of Dep't of Pub.*

*Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973);

*KM Enterprises, Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) ("As a general matter, states

enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law."),

*cert. denied*, 134 S. Ct. 303 (2013). This immunity extends to suits which name state agencies or

departments as defendants. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Plaintiff's initial Complaint [Doc. 1], filed March 7, 2016, named three individual defendants,

Colleen Michelson, Sardis Khazarian, and Paula Piccirillo (collectively, "the Individual

Defendants").[5] Michelson and Khazarian are identified as employees of the Department of Social

Services, and Piccirillo is identified as an employee of the Department of Support Enforcement. On

December 9, 2016, Plaintiff filed an Amended Complaint [Doc. 15], as of right, pursuant to Federal

Rule of Civil Procedure 15(a)(1). *See* Electronic Order, Doc. 14. The operative Amended

Complaint [Doc. 15] names, as sole defendants, the two state agencies which employ the Individual

Defendants, thereby terminating the Individual Defendants from this case. The Defendant Agencies

raise their Eleventh Amendment immunity as a jurisdictional bar to this suit, meriting dismissal.

Def. Br. 12.

"Connecticut has not waived its sovereign immunity with respect to claims for money

damages brought under section 1983 . . . ." *Turner v. Boyle*, 116 F. Supp. 3d 58, 74 (D. Conn. 2015)

(citing *Morneau v. Connecticut*, 150 Conn. App. 238, 251-53 (Conn. App. Ct. 2014), *cert. denied*,

312 Conn. 926 (Conn. 2014)). Therefore, the Eleventh Amendment clearly divests this Court of

jurisdiction over the operative Amended Complaint, as the Defendant Agencies are entitled to

---

[5] References to "the Individual Defendants" should not be taken to imply that these three
individuals are presently parties to this matter; they are not.

sovereign immunity as state agencies, and the state of Connecticut has not waived that immunity as to claims brought under § 1983.

Under this analysis, Defendants' Motion to Dismiss will be GRANTED for lack of subject matter jurisdiction. This Ruling will not end there, because, as noted, there remain pending various Motions for Leave to Amend [Docs. 32, 34, 35], regarding the Amended Complaint. The Court had stayed these Motions, and granted Defendants the right to be heard prior to any grant of leave to amend. *See* Docs. 36, 43. In the interests of economy, the Court will review and resolve these pending Motions now, as part of this Omnibus Ruling.

### III. STANDARD FOR GRANTING LEAVE TO AMEND THE COMPLAINT

In cases like the one at bar, where a party is not entitled to amend its pleading as of right, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The leading case on the propriety of amendment of pleadings by leave of court is *Foman v. Davis*, 371 U.S. 178 (1962). The Supreme Court stated generally that "the purpose of pleading is to facilitate a proper decision on the merits." 371 U.S. at 182 (citing and quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). *Foman* then voices this oft-quoted guidance:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought [to amend] should, as the rules require, be "freely given."

371 U.S. at 182.

Although, under ordinary circumstances, leave to amend must be freely given, denial is proper where the proposed amendment would be "futile." *Foman*, 371 U.S. at 182. An amendment is considered "futile" if the amended pleading fails to state a claim, or would be subject to a successful motion to dismiss on some other basis. *See, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"); *Donovan v. Am. Skandia Life Assur. Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003) ("Where a proposed amended complaint cannot itself survive a motion to dismiss, leave to amend would be futile and may clearly be denied"), *aff'd*, 96 F. App'x 779 (2d Cir. 2004), *cert. denied sub nom Hendrickson v. Am. Skandia Life Assur. Corp.*, 543 U.S. 1146 (2005); *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 283 (D. Conn. 2015), *reconsideration denied sub nom. Bentley v. Tri-State of Branford, LLC*, No. 3-cv-141157, 2016 WL 2626805 (D. Conn. May 6, 2016).

A plaintiff must set forth sufficient factual allegations, which accepted as true, "state a claim to relief that is plausible on its face," in order to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)) (internal quotation marks omitted). In applying this standard, the Court is guided by "[t]wo working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor, although the Court need not accept "legal conclusions" or similar conclusory statements. *See id.* Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and only if a complaint states a plausible claim for

relief will it survive a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

Even under this standard, however, the Court must liberally construe *pro se* pleadings and hold them to a less rigorous standard of review than pleadings drafted by an attorney. *See Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008). Moreover, *pro se* pleadings and briefs must be read "to raise the strongest arguments they suggest." *Bertin v. U.S.*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted). The Court's review at the motion to dismiss stage may include documents that are either incorporated by reference into the complaint or attached as exhibits as well as public records. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

### IV. PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff has filed two formal Motions for Leave to Amend, [Docs. 32, 34], as well as a related Letter Motion [Doc. 35]. The Court, by prior Order [Doc. 36], stayed Plaintiff's various Motions for Leave to Amend, pending resolution of Defendants' instant Motion to Dismiss. Plaintiff's three Motions can be characterized thus: the First Motion for Leave to Amend [Doc. 32] was aimed at remedying perceived inadequacies of pleading, in order to avoid dismissal under Rule 12(b)(6); the Second Motion for Leave to Amend [Doc. 34] was aimed at establishing federal subject matter jurisdiction over this case, in order to avoid dismissal under Rule 12(b)(1); and the Letter Motion [Doc. 36] was aimed at correcting perceived inadequacies of service of process, to avoid dismissal under Rules 12(b)(2) and 12(b)(5). I will now address the import of these three Motions, and their cumulative effect, beginning with Plaintiff's most recent Motion.

**A. Plaintiff's Letter Motion for Leave to Amend**

Plaintiff's Letter Motion for Leave to Amend [Doc. 35] seeks to perfect service of process on the Individual Defendants prior to the August 2, 2017 deadline for Plaintiff's response to the Defendants' Motion to Dismiss. Plaintiff's efforts to that end were premature, as the Individual Defendants were not, and are not today, named as defendants to this lawsuit, and service will only be required in the event that the Court grants leave to amend the Amended Complaint so as to name the Individual Defendants. This Letter Motion will therefore be DENIED as moot.

**B. Plaintiff's Second Motion for Leave to Amend**

Plaintiff's Second Motion for Leave to Amend [Doc. 34] seeks to reinstate the Individual Defendants as defendants to this matter, named in their individual and official capacities. As discussed in this Ruling, the operative Amended Complaint names the Defendant Agencies as sole defendants. Because of those state agencies' Eleventh Amendment immunity from suit, that Amended Complaint is subject to dismissal for lack of subject matter jurisdiction. If amending the complaint to name the Individual Defendants will not establish subject matter jurisdiction over Plaintiff's claims, this Second Motion for Leave to Amend should be denied as futile. *See Foman,* 371 U.S. at 182.

Suits for damages against state employees, in their official capacities, are barred under the Eleventh Amendment, as suits against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

The Eleventh Amendment bar does not extend to claims for injunctive relief from state officers. "Under the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123 (1908), however, a plaintiff may sue a state official acting in his official capacity –

notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)).

Nor does the Eleventh Amendment bar suits for damages against state employees named in their individual capacity. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

Thus, naming the Individual Defendants as defendants to this case, as requested by Plaintiff's Second Motion for Leave to Amend, might be sufficient to establish this Court's subject matter jurisdiction, first, as to Plaintiff's claims for injunctive relief against the Individual Defendants in their official capacities, and, second, as to damages against the Individual Defendants in their individual capacities.[6] The ultimate result of this Ruling does not depend on this question of subject matter jurisdiction, and for that reason, and because the Defendants have not yet had an opportunity to respond to the various Motions for Leave to Amend, the Court makes no holding as to whether or not the Plaintiff's Second Motion for Leave to Amend his Complaint should be granted.

_____

[6] It is possible that some or all of the proposed Individual Defendants may be protected by the doctrines of absolute and/or qualified immunity. *See, e.g., Bryant v. Cherna*, 520 F. App'x 55, 58 (3d Cir. 2013) ("Any claims against [county domestic relations section] employees in their individual capacities for their roles in initiating and prosecuting child support proceedings would be barred by the doctrine of quasi-judicial immunity."). Both of these doctrines of immunity require a fact-intensive inquiry. State employees will be entitled to absolute immunity "not because of their particular location within the Government but because of the specific nature of their responsibilities." *Root v. Liston*, 444 F.3d 127, 131 (2d Cir. 2006) (quoting *Butz v. Enconomou*, 438 U.S. 478, 511 (1978). Likewise, to establish a state official's entitlement to qualified immunity, an inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201(2001)). Based upon the limited record in this matter, the Court is unable to draw any conclusion as to these issues of immunity, and, indeed, need not reach the question to resolve the pending motions.

## C. Plaintiff's First Motion for Leave to Amend

This opinion will now turn to Plaintiff's First Motion for Leave to Amend [Doc. 32], and whether, when considered in concert with the Second Motion's proposed reinstatement of the Individual Defendants, the composite proposed Second Amended Complaint would state a claim upon which relief could be granted, sufficient to survive a Rule 12(b)(6) motion to dismiss and meeting the *Foman* standard for leave to amend.

The First Motion for Leave to Amend refers to various "defects" of the Amended Complaint, including insufficient service of process, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. The First Motion for Leave to Amend states that "[a] second amended complaint is required to cure the defects," and includes a Proposed Second Amended Complaint ("Proposed SAC"). Defendants have, by their Reply Brief [Doc. 41], withdrawn their contention as to inadequate service of process, acknowledging the receipt of proper service on the Connecticut Attorney General, as provided for by this Court's prior Ruling [Doc. 27]. Def. Reply Br. ¶ 1. The Court will therefore restrict this analysis to the question of whether, considered in concert with the Second Motion for Leave to Amend, the First Motion for Leave to Amend states any claim upon which relief can be granted.

Plaintiff's claims are brought under 42 U.S.C. § 1983. First Motion ¶ 1. "With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006) (citing 42 U.S.C. § 1983), *aff'd sub nom. Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first

step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted).

As Defendants note in support of their Motion to Dismiss, Plaintiff's operative Amended Complaint does not identify which of his federal rights he believes was violated by Defendants' actions. *See* Def. Br. 23. The Proposed SAC does identify, in general fashion, the federal rights which Plaintiff alleges were violated. Plaintiff alleges that Defendants violated his constitutional rights, as established by the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. *See* Proposed SAC, ¶¶ 41, 48, 50. The Proposed SAC also alleges a variety of violations of state law. *See id.* ¶¶ 40, 50. The Court will now examine these alleged violations in turn, to see if any of them meet the pleading standard so as to state a claim upon which relief can be granted.

## I. Fourth Amendment

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The Due Process Clause of the Fourteenth Amendment extended the protection of the Fourth Amendment to state government searches and seizures, as well as federal. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). "The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotation marks omitted) (quoting *Oliver v. U.S.*, 46 U.S. 170, 176 (1984)). Plaintiff's Proposed SAC, liberally construed, does not allege specific facts establishing *any* search or seizure of his person, house, papers, or effects. The monies collected from Plaintiff towards payment of his purported child support debt are not protected by the Fourth Amendment. Thus it is not necessary to reach the reasonableness inquiry, and, so far as the Fourth Amendment is concerned, Plaintiff's efforts to amend the Amended Complaint would be futile and will therefore

be DENIED.

**ii. Fifth Amendment**

The Takings Clause of the Fifth Amendment provides that no private property shall "be taken for public use, without just compensation." U.S. Const. Amend. V. The Takings Clause applies against State actors through the Fourteenth Amendment. *See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226 (1897). "To state a claim under . . . the Takings Clause, plaintiffs [a]re required to allege facts showing that state action deprived them of a protected property interest." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992).

Plaintiff has not stated a claim for violation of the Takings Clause, as he complains of a government collection made to satisfy a debt. Many of Plaintiff's claims are aimed at challenging the *validity* of that debt, but, be that as it may, his description of the *mechanism* of collecting on that debt does not allege facts adequate to establish a government taking under the Fifth Amendment. *See, e.g., U.S. v. Stallons*, 565 Fed. App'x 314, 316 (5th Cir. 2014) (garnishment to obtain restitution following bank fraud conviction did not constitute a taking); *Branch v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995) (government seizure of property to satisfy tax liability or civil penalty would not be a taking); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1229 (S.D. Cal. 2004) (plaintiff failed to state a claim as to Takings Clause challenge to state garnishment of prisoner trust account, where garnishment was made to satisfy a civil judgment).

The Fifth Amendment also establishes a right to due process of law prior to deprivation of life, liberty, or property. U.S. Const. Amend. V. This Fifth Amendment Due Process Clause pertains to deprivations caused by the federal government. *Pub. Utils. Comm'n of Dist. of Columbia v. Pollack*, 343 U.S. 451, 461 (1952). As Plaintiff's claims are against state agencies and employees,

any alleged violation of his right to due process of law would be brought under the due process clause of the *Fourteenth* Amendment, as discussed below.

Because Plaintiff has not stated a claim upon which relief can be granted for violation of his rights under the Fifth Amendment, his effort to amend his Amended Complaint to include such a claim is futile, and will therefore be DENIED.

### iii. Eighth Amendment

The Eighth Amendment to the Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Due Process Clause of the Fourteenth Amendment makes the Excessive Fines Clause applicable to the States. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433-34 (2001). "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. U.S.*, 509 U.S. 602, 609–10 (1993) (internal quotation marks omitted) (quoting *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

Accepting Plaintiff's factual allegations as true for the purpose of this analysis, the Defendants sought to recover monies fraudulently obtained from the state of Connecticut. The monetary recovery sought was remedial, not punitive, in nature, and thus does not implicate the Excessive Fines Clause. *See U.S. v. Davis*, 648 F.3d 84, 96 (2d Cir. 2011) (remedial civil forfeitures do not implicate the Excessive Fines Clause because they are not punitive). *See also KYD, Inc. v. U.S.*, 836 F. Supp. 2d 1410, 1415 (Ct. Int'l Trade 2012) ("Because the [antidumping duty rate] selected by Commerce is remedial and not punitive, it cannot violate the 8th Amendment."); *U.S. v. Phillip Morris USA*, 310 F. Supp. 2d 58, 63-64 (D.D.C. 2004) (because disgorgement of ill-gotten

proceeds is remedial, not punitive, it does not implicate the Excessive Fines Clause).

For the foregoing reasons, granting Plaintiff leave to amend his complaint so as to allege violation of his rights under the Eighth Amendment would be futile, and will therefore be DENIED.

### iv. Ninth Amendment

The Ninth Amendment protects rights not enumerated in the Constitution. U.S. Const. Amend IX. "[T]he Ninth Amendment is recognized as a rule of construction, not one that protects any specific right. No independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." *Williams v. Perry*, 960 F. Supp. 534, 540 (D. Conn. 1996) (internal quotation marks omitted) (quoting *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995) (collecting cases)). "Moreover, the Ninth Amendment has not been interpreted to be incorporated into the due process clause of the Fourteenth Amendment, and therefore has no applicability to the allegations against these non-federal actors." *Rini*, 886 F. Supp. at 290. Accordingly, granting Plaintiff leave to amend his complaint so as to allege violation of his rights under the Ninth Amendment would be futile, and will therefore be DENIED.

### v. Fourteenth Amendment

"No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The fundamental requirements of due process are that "a person in jeopardy of serious loss be given notice of the case against him" and the opportunity to be heard, in defense against that loss, "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976) (internal quotation marks omitted). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular

situation demands." *Id.* at 334.

Here, accepting Plaintiff's factual allegations as true for the purposes of this analysis, Plaintiff was deprived of $4,212.80. Plaintiff received prior notice before any monies were collected from him, as well as an early court hearing in 1998. Proposed SAC, ¶¶ 7, 8. As discussed earlier in this Ruling, Plaintiff has also had the post-facto opportunity to contest the collection of his money in two separate and protracted state court proceedings. Where Plaintiff's deprivation was purely monetary, and therefore compensable post-facto, and where he, in fact, had notice and opportunity to be heard, the circumstances do not state a claim for violation of his right to due process. *See also Stallons*, 565 Fed. App'x at 316 (garnishment of joint bank accounts did not violate due process rights of debtor's spouse); *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012) (same). Accordingly, granting Plaintiff leave to amend his complaint so as to allege violation of his rights under the Fourteenth Amendment would be futile, and will therefore be DENIED.

**vi. State Law Claims**

The Proposed SAC includes claims brought under Connecticut law, including fraudulent concealment of cause of action (C.G.S. § 52-595) and various violations of the Connecticut Constitution. *See* Proposed SAC, ¶¶ 40, 50. For a federal district court, like this one, to hear claims brought under state law, those state law claims must be closely related to a claim brought under federal law. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The related or underlying federal claim "must have substance sufficient to confer subject matter jurisdiction on the court." *Id.*

Having found that the Proposed SAC fails to state any federal claim upon which relief can be granted, this Court has no subject matter jurisdiction over Plaintiff's state law claims. Granting

leave to amend as to those claims would therefore be futile, and shall be DENIED.

**D. Conclusion as to Leave to Amend**

For the foregoing reasons, granting leave to amend the Amended Complaint would be futile, and will therefore be DENIED. Even if the addition of the Individual Defendants would cure the Amended Complaint's lack of subject matter jurisdiction – and I do not draw any final conclusions on this point – the failure to state a claim upon which relief can be granted renders all of Plaintiff's sought amendments futile under the *Foman* standard.

## V. ALTERNATIVE GROUNDS FOR DISMISSAL

In addition to the lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, there are a number of possible alternative grounds for dismissal that have not been touched upon in this opinion. The Defendant Agencies, in their Motion to Dismiss, mention statutes of limitation, *res judicata*, and collateral estoppel. Def. Br. 24. Were the proposed Individual Defendants to be named in a future amended complaint, qualified and/or absolute immunity could be added to this list. The factual record of this case is very limited, and none of these issues have been briefed. The Court does not, and need not, make any determination as to their validity as complete or partial defenses.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 24] is GRANTED, Plaintiff's Motions for Leave to Amend the Amended Complaint [Docs. 32, 34] are DENIED as futile, Plaintiff's Letter Motion for Leave to Amend [Doc. 35] and Motion for Preliminary Injunction [Doc. 38] are DENIED as moot, and Plaintiff's Amended Complaint [Doc. 15] is DISMISSED, without prejudice. As a result, there are no pending claims in this action and

the Clerk is directed to close this case.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 21, 2018

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge